STEWART *v.* MURRELL.

Opinion delivered July 9, 1898.

TENANCY—NOTICE TO VACATE.—In the absence of a local custom to the contrary, a tenant from month to month must give 30 days' notice of his intention to vacate the leased premises. (Page 472.)

Appeal from Pulaski Circuit Court, Second Division.

JOSEPH W. MARTIN, Judge.

STATEMENT BY THE COURT.

This is a suit by Mrs. M. B. Murrell, appellee, against J. M. Stewart, appellant, for the rent, for the month of February, of a dwelling house in this city. There was evidence tending to show that the renting was by the month; that the rent was payable in advance; that appellant, the tenant, before the end of January, notified the appellee, the landlord, of his intention to vacate the premises at the end of that month; that he did so vacate, and had moved out before the last day of January. The court instructed the jury as follows: "You are instructed, as a matter of law, that fifteen days' notice of an intention to quit must be given by a tenant by the month to his landlord, to relieve him of liability for the rent of the next succeeding month; and, unless you find that such notice was given, you will find for the plaintiff for one month's rent." The appellant duly excepted to the giving of this instruction. The court refused the declarations of law asked by appellant, as they proceeded upon theory opposite to that announced in the court's instruction. The appellant duly excepted. The jury found for the plaintiff (appellee here.) Appellant filed his motion for a new trial, alleging as error the instruction

given, and the refusal of the court to give the several declarations of law asked by appellant. The motion for a new trial was over-ruled, and appellant appealed. The bill of exceptions does not profess to contain all the evidence.

The facts upon which the case was tried are substantially as follows: Mrs. M. B. Murrell, through her agents, Parker & Cates, rented to J. M. Stewart a dwelling house, No. 1600 Lousiana street, in the city of Little Rock, by the month at $40 per month. Stewart took possession on or about the 16th of September 1891, and paid his rent for September, October, November and December, 1891, and January, 1892. On January 28, 1892, Stewart notified Mrs. Murrell, through her agents, of his intention to vacate the premises. He commenced to move on the 29th of January, and got entirely out on the 30th.

*Ashley Cockrill*, for appellant.

The court erred in instructing the jury that notice of fifteen days was necessary to terminate a monthly tenancy. 4 Hun, 451; Gear, Landl. & Ten. § 32; 7 C. & P. 56; Wood, L. & T. *p 127, note; 14 Abb. Pr. 130; 10 Pa. St. 41; 14 Ct. Cl. 319; 24 How. Pr. 347. Reasonable notice is all that is required, and what is reasonable notice is a question for the jury. Wood, L. & T. § 46; *ib.* p. 110; 2 Rich. (S. Car.) 346; 3 Burr, 1609; 44 S. C. 526; 37 N. Y. Supp. 59; 4 Hun, 451; 6 N. Y. Supp. 617; 127 N. Y. 175; 28 N. E. 25; 19 How. Pract. 29; 47 N. Y. 679; 8 Cow. 13; 64 Barb. 476; 48 Barb 551; Gear, L. & T. § 32, notes 10 and 16.

*W. E. Atkinson*, for appellee.

Formal notice is necessary to terminate a tenancy from month to month, 1 Washb. R. Prop. (5 Ed.) 634–637, ¶¶ 4, 8, 10, 13, 23. The length of notice required is measured by the length of time between the rent payments. *Ib.* ¶¶ 24, 26. See, also, 1 Tay. L. & T. §§ 54–58; Woodf. L. & T. 339, and note.

HUGHES, J., (after stating the facts). The only question in this case is, did the court commit a reversible error in its instruction to the jury "that fifteen days' notice of an intention to quit must be given by a tenant by the month to his

landlord to relieve him of liability for the rent of the next suc-
ceeding month; and, unless you find such notice was given, you
will find for the plaintiff for one month's rent?''

The appellant contends that reasonable notice only is re-
quired, and that what is reasonable notice is a question of fact
for the jury under the circumstances of the case, and to support
this contention cites Wood on Landlord and Tenant, § 46, p.
126, which is as follows:    "Where no definite term is agreed
upon, and the rent is fixed at so much a week, month, quart-
er or half-year, the tenancy is weekly, monthly, quarterly or
half-yearly, according to the circumstances, and the custom, if
any, in the locality where the premises are located, and, in
the absence of any stipulation to the contrary, they may at
least be terminated by a reasonable notice to quit.    As to what
is) reasonable notice is to be ascertained from the custom of the
place, if there is any, or, if not, then by the circumstances of
the case."    And again at page 110, Wood says:    "There is
some uncertainty as to the length of notice required to determine
a quarterly or monthly or weekly tenancy.    It does not appear
to have ever been decided that, in the case of an ordinary
weekly or monthly tenancy, a month's or week's notice to quit
must be given.    A tenant, who enters upon a fresh week, may
be bound to continue until the expiration of that week, or to
pay the week's rent, but that is very different thing from
giving a week's notice to quit."

In Gear on Landlord and Tenant, p. 85, § 32, it is said:
"A notice to quit is necessary to determine any periodical ten-
ancy, unless terminated by agreement, or the landlord elects to
eject a tenant who has disclaimed the tenancy.    *    *    *    The
right to notice to quit is mutual between landlord and tenant.
*    *    *    A tenant from month to month is entitled to thirty
days' notice to quit, unless the statute allows a shorter period
of notice.    The notice must be for a full month before the day
on which a new holding would begin, and terminate at the ex-
piration of a monthly period."    See cases cited to § 32 in note
15, p. 89.

We have no statute regulating the length of notice re-
quired in such case, and we are therefore governed by the com-
mon-law rule.    In the case of *Steffens* v. *Earl*, 11 Vroom, 133,

it is said that "in cases of tenancies for periods running less than a year, the rule enunciated by the text-writers is that the notice must be regulated by the letting, and must be equivalent to a period. Taylor on Land. and Ten. § 478; Archb. on Land. and Ten. 87. How the rule arose is uncertain. It certainly did not have its origin in any resolution of the courts. * * * It seems, however, to have very early shaped itself into a custom. The habit of giving and requiring reasonable notice, in cases of tenancies, not for a single term, but for recurring periods, which reasonable notice, when the periods were from year to year, was, according to Lord Ellenborough, very early held to be six months, was, probably by a custom equally as old, in tenancies for less periods established as now stated by the books. By strict relativeness, the rule of a half year's notice in tenancies from year to year would only require a half month's or a half week's notice in cases of monthly or weekly tenancies. The briefness of the latter, and the length of the former kind of tenancies, was the probable reason why the rule was not uniform. Whatever the reason of the rule, it seems to have been well grounded in the general understanding of the English people. The cases cited by the books of authority in support of the rule already stated are merely recognitions of what was obviously a custom, and, as such, the cases would seem to have as much weight as authority as if they had expressly ruled the point."

While there is some conflict in the cases, the decided weight of authority seems to be as stated in *Steffens* v. *Earl, supra.* There was no evidence of a local custom in this case. There was no error prejudicial to appellant in the instruction given by the court as above quoted, though in fact erroneous in that it fixed the notice required to be given in a tenancy from month to month by the tenant to the landlord of the tenant's intention to quit at fifteen days, whereas the law fixes it at thirty days.

The judgment of the circuit court is affirmed.